[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a contested action for dissolution brought by the plaintiff wife, whose birth name was Heather Vernitus, on the grounds of irretrievable breakdown.
The plaintiff wife and defendant husband intermarried CT Page 11232 at Bristol, Connecticut on August 28, 1987 and both have been residents of the State for a number of years preceding this action. There has been one child born of the marriage, Brittany Nicole Logan, a minor, having been born on June 25, 1990.
The first year of the marriage was uneventful. Problems began in early 1989 when an argument escalated to the point where the husband pushed the wife down forcefully and shook her with his hands around her neck. A similar incident occurred about six months later in June of 1989 when Mr. Logan punched through a bathroom door where his wife had retreated after an argument. Four other incidents which led to some form of physical altercation between the parties occurred in March, May, July and August of 1990. In each of these six previously mentioned incidents, the wife also reacted to a certain degree in an aggressive manner by shouting at, hitting and scratching her spouse. Finally, in November of 1990, after arguing over the issue of time spent by both grandmothers with their daughter, Mr. Logan had what appeared to be something similar to a seizure, but was more akin to an emotional withdrawal from what he perceived to be a situation with which he could not cope. Shortly after this incident, Mrs. Logan moved out with her daughter. She moved in with her parents, Mr. and Mrs. Vernitus, with whom she and Brittany still reside.
Mrs. Logan, who is approximately 30 years of age, has a high school diploma and one year of secretarial training from Morse School of Business. She has worked at Orion Company for over ten years and is currently a Human Resources Assistant to the Vice President of Personnel. She has worked only part-time since Brittany's birth about three and a half years ago. Mr. Logan, age 33, is an insurance auditor, employed with Commercial Union Insurance Company. He resides in a condominium which he purchased in October of 1982 prior to the marriage.
In addition to the plaintiff and defendant, the paternal grandparents, Bruce and Patricia Logan, are also parties to this action. Mr. Logan testified that the reason he and his wife intervened in this matter was because his son was experiencing problems with his visitation starting about February or March of 1991. He CT Page 11233 and his wife had concerns that his son was not being given the opportunity to bond well with his granddaughter. He also stated his desire that both he and his wife have visitation during the summer months with their granddaughter in an order separate from the defendant father, Kevin Logan.
The bulk of the evidence presented in this case through all parties, including the paternal grandparents, has to do with the issue of custody and visitation. Although there was some testimony elicited to both the plaintiff and defendant concerning financial issues, the majority of trial time was spent on the former issue. The plaintiff, through her own testimony and that of Dr. James Black, who did a comprehensive Custody Evaluation Report, attempted to paint a picture of an emotionally unstable and violent defendant. There was much reference to not only the medical history of Kevin Logan, but also that of his father, Bruce Logan. Although Dr. Black's evaluation does include a good deal of medical history concerning Kevin Logan, neither his testimony nor his ultimate recommendation in the written evaluation place such weight on that medical history as to conclude that the visitation should be supervised or unusually limited. Whether Mr. Logan's "emotional lability" stems from a neurobiological disorder which he has had since birth resulting in later emotional problems, or whether the emotional problems resulted simply from environmental sources, Dr. Black concluded, as well as does this Court, that Mr. Logan is capable at this time of being a loving and competent parent with respect to Brittany's emotional and physical needs.
The attorney for the child, Jennifer Davis, who was appointed by the Court on November 20, 1991, agrees with this conclusion. Further, both Ms. Davis and Dr. Black recommend that sole legal custody should be awarded to the mother. Both came to this conclusion primarily because the Logans are in constant conflict with each other and it would be in Brittany's best interest to have one parent as the sole legal custodian of the child. Dr. Black's recommendation is that the residential parent should be vested with legal custody so that Brittany's healthy development may continue with less tension and turmoil. While the Court generally places great weight on expert CT Page 11234 testimony and is cognizant of the fact that Dr. Black recommended sole custody to the mother, this Court does not feel that simply because the parties are not entirely cooperative in decision making and, secondly, that physical custody will be with the mother, is reason enough to vest sole custody in the mother. Although it is difficult for the parties in the instant case to communicate easily concerning the best interests of the child, this Court does not feel that that requires an order of sole custody to one or the other parent. There are very few factual situations in which it is necessary for one parent to have the legal power to make a decision for the benefit of the child without consent and input from the other parent. In fact, an award of joint custody where there is conflict often encourages cooperation by the parties to the extent possible for the benefit of the minor child.
In arriving at the financial orders in this case, the Court has considered all the criteria contained in Sections46b-62, 46b-81, 46b-82 and 46b-84 of the Connecticut General Statutes.
Accordingly, dissolution of the marriage shall enter on the grounds of irretrievable breakdown and the following order shall enter:
 1. Custody of the minor child shall be in the plaintiff and defendant jointly with physical custody to the plaintiff.
 2. Visitation with the minor cild [child] shall be in the following manner:
 Until March 1, 1994 the father shall have Brittany on alternate weekends from Friday at 4:00 p.m. until Saturday at 7:00 p.m. After March 1, 1994, the father shall have Brittany on alternate weekends from Friday at 4:00 p.m. until Sunday at 7:00 p.m. On those weeks the father does not have a weekend visit, he shall have a visit on Monday afternoon following the mother's weekend, from 4:00 p.m. to 7:00 p.m. He shall also have visitation every Wednesday from 4:00 p.m. to CT Page 11235 7:00 p.m. Any single visitation day which is missed due to Brittany's illness shall not be made up, except that the father may telephone Brittany once on that day to speak with her. If more than one visitation day is missed due to illness or if a weekend visitation is missed, then that time shall be rescheduled. In the summer of 1994, the father shall have one week of vacation with Brittany. Beginning in the summer of 1995 and for every year thereafter, the father shall have two weeks of vacation with Brittany. It will be at the father's discretion as to whether or not those two weeks of vacation will be consecutive. The father must notify the mother in writing by May 1 of each year to select his summer vacation periods. In the event the father does not give such notice, the mother may select the weeks of her vacation, and her choice shall be binding. Any vacation plans shall take into account the child's scheduled activities, including but not limited to summer camp, extracurricular lessons and summer school. In any event, both parents shall notify the other of their vacation choices, and each parent shall have reasonable telephone access to Brittany when she is away from the other parent. Beginning in the winter of 1995, the mother and father shall alternate Brittany's winter and spring vacations. The father shall pick up Brittany on Saturday at 9:00 a.m. and shall return her on the following Saturday at 7:00 p.m. Each parent shall have reasonable telephone access to Brittany when she is with the other parent.
 In addition to the regularly scheduled visitation times and vacations, the parents shall alternate the following holidays: New Year's Day, President's Day, Good Friday, Easter, Memorial Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving, Christmas Eve and Christmas Day. The schedule CT Page 11236 shall begin with Brittany spending Christmas Eve with her mother in 1993. Further, the parents shall alternate Brittany's birthday each year, with the non-birthday parent celebrating the child's birthday with her on the weekend preceding or following her birthday. The schedule shall begin with Brittany spending her birthday with her mother in 1994. The father shall always celebrate Father's Day and his birthday with Brittany, and the mother shall always celebrate Mother's Day and her birthday with Brittany. If a parent's birthday falls on a regularly scheduled visitation day with the other parent, the parents will work out together, in good faith, to reschedule one or the other of the visits. The father's holiday visitation shall be from 9:00 a.m. to 7:00 p.m., unless the parents otherwise agree. The parents shall alternate the Halloween holiday, with the father picking up Brittany at 4:00 p.m. and returning her at 8:00 p.m. The father shall celebrate Halloween in 1994 with Brittany. Further, it should be expressly recognized by both parents that the father's family is an extended one that spends considerable time together and celebrates a number of personal events. Therefore, the father shall have four additional "personal holiday" visits with Brittany to celebrate those family events. The father shall give the mother three weeks notice when he plans to exercise these visits, and the visits shall consist of a three-hour visit, the timing of which shall be at the father's discretion. It is understood that these visits may fall during the mother's time with Brittany and that there will not be makeup time scheduled, except that these personal holidays may not be Scheduled during the mother's vacation time.
 The Court further orders that neither parent shall in any way impede, obstruct or interfere with the exercise by the other of his or her right of companionship with Brittany. Both parents shall at all times encourage and foster love and affection between Brittany and her other CT Page 11237 parent and shall exert their best efforts to work cooperatively and with flexibility to create plans for Brittany which are consistent with positive development of her potential, while at the same time protecting and maximizing her time with each parent. Both parents shall comport themselves with dignity and restraint in visitation matters and both shall facilitate said visitation orders.
 3. The father shall have one weekly telephone call to Brittany, which call is to be on a fixed schedule as prearranged by the parents. The length of the call is to be determined by the child, and the mother shall not interfere, or allow anyone else to interfere, in Brittany's telephone conversations with her father. At all times telephone numbers are to be shared with the other parent, to ensure contact with the child during holiday and vacation periods. During those times when Brittany is vacationing with her father, her mother shall be allowed two weekly telephone calls, which calls shall be on a fixed schedule as prearranged by the parents, and when Brittany is vacationing with her mother, her father shall be allowed two weekly telephone calls, which calls shall also be on a fixed schedule as prearranged by the parents. Neither parent shall attempt to discuss the child's telephone call with her other parent, except at the child's invitation.
 4. Neither the mother nor the father shall change their residence without giving the other parent 30 days written notice. Neither parent may permanently remove Brittany from the State of Connecticut without written notification to and written approval from the other parent, or by Order of this Court, except that either parent may take the child out of state for a day trip or weekend trip or vacation. If either parent removes the child from the State of Connecticut for a weekend or a vacation, he or she must provide the other parent with a telephone number where that parent may CT Page 11238 contact the child.
 5. The defendant father shall maintain Brittany on his medical insurance coverage, as available through his employment, and if such coverage is not available, the mother shall maintain Brittany on her medical insurance coverage, as available through her employment. All unreimbursed medical and dental expenses shall be equally divided by the parties.
 6. Although the plaintiff is seeking an order of periodic alimony, the Court feels that the facts of this case do not warrant such an order. Therefore, there will be no alimony awarded to either party.
 7. The defendant shall pay $130 per week as child support to the plaintiff.
 8. Dr. Black's fees in this matter shall be paid within 30 days of this Order and divided by the parties.
 9. Attorney's fees for the minor child shall be shared equally by the parties and shall be paid within 90 days of this Order.
 10. Each party shall be responsible for his or her own counsel fees.
So ordered.
Thelma Santos, J. CT Page 11239